## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND,
## BALTIMORE DIVISION

| | |
|---|---|
| **JOSEPH PASCHALL,** | * |
| *Plaintiff*, | * |
| **vs.** | * **Civ. No.: 12-cv-2006** |
| **EQUABLE ASCENT FINANCIAL, LLC** | * |
| | * |
| *Defendant*. | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Now comes Joseph Paschall, ("Plaintiff"), by and through his attorney, E. David Hoskins and The Law Offices of E. David Hoskins, LLC, and for his Complaint against Defendant, Equable Ascent Financial, LLC, alleges and states as follows:

## PRELIMINARY STATEMENT

1.      This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq.* (hereinafter "FDCPA"); the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law, § 14-201, *et seq.* (hereinafter "MCDCA"); and the Maryland Consumer Protection Act, Md. Code Ann., Com. Law, § 13-101, *et seq.*

1

(hereinafter "MCPA").

2.      This lawsuit involves unsupported allegations made by Defendant that Joseph Paschall allegedly incurred and later allegedly defaulted on a debt to "Chase Bank USA, N.A. (WAMU)." This alleged debt will hereinafter be referred to as "the subject debt."

3.      The subject debt is a "debt" as that term is defined by 15 U.S.C. § 1692$a$(5) of the FDCPA, as it allegedly arose out of a credit card account that was used primarily for personal, family, or household purposes.

4.      The subject debt is a "consumer transaction" as that term is defined by Md. Code Ann., Com. Law, § 14-201(c) of the MCDCA.

5.      Defendant attempted to collect the subject debt by engaging in "communications" as defined in 15 U.S.C. § 1692$a$(2) of the FDCPA.

## JURISDICTION AND VENUE

6.      Jurisdiction arises under the FDCPA, 15 U.S.C. §1692$k$(d) and 28 U.S.C. § 1331.

7.      Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

8.      Venue lies properly in this District pursuant to 28 U.S.C. § 1391(b), in that the Defendant transacts business in this District and a substantial portion of the acts that give rise to the claim occurred within

this District. Additionally, Plaintiff resides within the District of Maryland.

## PARTIES

9.      Joseph Paschall is an individual who was at all relevant times residing in either Anne Arundel County or Baltimore City, Maryland.

10.     Joseph Paschall is a "consumer" as defined in 15 U.S.C. § 1692$a$(3) of the FDCPA, as he is a natural person improperly sued in the attempt to collect a consumer debt allegedly owed by another consumer. Joseph Paschall is a "person" as that term is defined by the MCDCA and the MCPA.

11.     Defendant, Equable Ascent Financial, LLC, ("Equable") is a limited liability company originated pursuant to the laws of Delaware, with its principal place of business located at Buffalo Grove, LLC, and is authorized to do business in Maryland and subject to personal jurisdiction in Maryland.

12.     Equable claims to have purchased a debt owed to "Chase Bank USA, N.A. (WAMU)." At the time of the alleged purchase, the subject debt was alleged to be in default. Equable holds an active collection agency license with the State of Maryland, Department of Labor, Licensing and Regulation. Equable is regularly engaged, for profit, in the collection of

debts allegedly owed by consumers, which it purchases after these debts have gone into default. In 2009, Equable retained counsel to file one (1) lawsuit in the District Court of Maryland. In the first six months of 2010, only 66 lawsuits were filed on behalf of Equable. At that point, the flood gates opened. In the second half of 2010, Equable retained counsel to file 988 new lawsuits in the District Court of Maryland. In 2011, Equable filed 3,231 lawsuits.

13.     Equable hired the law firm of Schlee & Stillman, LLC to collect the subject debt and is vicariously liable for the acts and omissions of Schlee & Stillman which at all times relevant to this dispute was the agent of Equable acting within the scope of its agency.

14.     At all relevant times Equable acted as a "debt collector" within the meaning of 15 U.S.C. §1692$a$(6) of the FDCPA. Equable is not a creditor of Joseph Paschall, but rather is a debt buyer attempting to collect a consumer debt in default that it alleges is owed by Joseph Paschall.

15.     At all relevant times Equable acted as a "collector" and "person" as those terms are defined by Md. Code Ann., Com. Law, § 14-201(b) of the MCDCA.

16.     The acts of Equable alleged herein were performed by its

employees and attorney agents acting within the scope of their actual or apparent authority.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

### A.   *The District Court of Maryland Process*

17.    The District Court of Maryland was created by an amendment to the Maryland Constitution and came into existence on July 5, 1971. In civil cases the District Court has exclusive jurisdiction in claims for amounts up to $5,000 and concurrent jurisdiction with the circuit courts in claims for amounts above $5,000 but less than $30,000.

18.    The District Court is a statewide court with 34 locations in 12 districts, and a staff including 107 judges. The Court hears disputes relating to landlord tenant matters, civil claims and criminal charges.

19.    The workload of the District Court has seen tremendous growth since its inception in 1971. In its first year, the Court processed just under 800,000 cases; today, more than two million cases are filed annually.

20.    Most collection lawsuits are filed in the District Court and, far too often, result in default judgments in favor of the party bringing the lawsuit when the defendant fails to appear and defend the action.

21.    Statistics published for Fiscal Year 2010 show that of the

300,453 total judgments entered, 247,435 (or roughly 82%) were not contested.

22.    The practice and procedures relating to the Maryland District Courts are established in Title 3 of the Maryland Rules.

23.    In the typical collection case, a defendant has fifteen days after being served with the summons and complaint to file a Notice of Intention to Defend explaining why he or she should not be required to pay the money the complaint alleges is owed. If a Notice of Intention to Defend is not filed, a streamlined process exists for obtaining a judgment based upon an affidavit.

24.    Maryland Rule 3-306 governs this process and allows the plaintiff in a collection action to include a demand for judgment on affidavit with the complaint. Under Maryland Rule 1-202(b) the affidavit must be "a written statement, the contents of which are affirmed under the penalties of perjury to be true."

25.    In 2011, Rule 3-306 required that the complaint be supported by an affidavit, made on personal knowledge, showing that the plaintiff was entitled to judgment as a matter of law. Rule 3-306 also required that the affidavit set forth facts that would be admissible in evidence and show

affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Finally Rule 3-306 required that the affidavit be accompanied by supporting documents or statements containing sufficient detail as to liability and damages.

26.    Under Maryland Rule 1-311(b), the signature of an attorney on a a complaint constitutes a certification that the attorney has read the complaint and that to the best of the attorney's knowledge, information, and belief there is good ground to support the filing of the complaint.

### B.    *Debt Buyers Lack the Evidence Required by Rule 3-306*

27.    One outgrowth of the global financial crisis has been an increase in the volume of accounts that are sold to debt buyers such as Equable. Such sales occur only after the original creditor has made the business decision to sell all right, title and interest in the account, rather than outsource the collection or pursue the collection themselves. Thus, when a debt buyer is involved, the original creditor has already decided that the account is not worth pursuing, which is why the accounts are sold for pennies on the dollar.

28.    Debt buyers frequently lack the documentation to prove the terms and conditions of underlying obligation, and also lack the proof

necessary to show the entire chain of assignment of the debt. Once the original creditor sells the account for pennies on the dollar, it does not want to be bothered with it again because it no longer has any financial interest in the account. For this reason, almost every agreement between original creditor and initial debt buyer purchaser (and between the original debt buyer purchaser and each subsequent assignee) is made without representations and warranties, and without recourse.

29.    The Court of Appeals of Maryland concluded that this overall lack of proof often leads to dubious judgments entered by default, and on September 8, 2011, made major changes to Rule 3-306 to become effective with cases filed after January 1, 2012. In the words of the Hon. Alan Wilner in his report to the Maryland Court of Appeals:

> The problem, which has been well documented by judges, the few attorneys who represent debtors, and the Commissioner of Financial Regulation, is that the [debt buyer] plaintiff often has insufficient reliable documentation regarding the debt or the debtor and, had the debtor challenged the action, he or she would have prevailed. In many instances, when a challenge is presented, the case is dismissed or judgment is denied. In thousands of instances, however, there is no challenge, and judgment is entered by default.

30.    Judge Wilner's observation was validated by the industry itself. Specifically, in a January 19, 2011, letter to the Rules Committee, industry

representative ACA International, The Association of Credit and Collection Professionals, stated its concern about the requirement that a debt buyer must provide the court with "a certified or otherwise properly authenticated photocopy of original of certain documentation establishing proof the consumer debt at issue existed."

31.     The reason the industry opposed the requirement of "proof the consumer debt at issue existed" is because, in their own words:

> The above documentation is often unattainable for a variety of reasons, the most important of which is that the original creditor no longer has the information or did not have it when selling an account or turning the account over for collection. Particularly in the context of credit cards, financial institutions are not required under federal law to maintain this type of information beyond two years.

32.     The argument presented by the industry was, in essence, that (1) because the original creditors do not have the documentation; and (2) because federal law does not require that the original creditors keep their records; therefore (3) the debt buyer industry should not be required to comply with the same rules of evidence that govern disputes of every other litigant who comes before the Court. No other type of plaintiff can successfully sue for breach of contract without offering any proof of the terms and conditions of the contract. Yet, this is precisely what is

attempted every day by debt buyers, such as Equable.

33.    The amendments to Rule 3-306 that apply to new complaints filed after January 1, 2012, clarified the evidentiary requirements that a debt buyer must meet when seeking a judgment on affidavit.

a.    The debt buyer must prove the existence of the debt by a certified or otherwise properly authenticated photocopy or original of at least one of the following: (A) a document signed by the defendant evidencing the debt or the opening of the account; (B) a bill or other record reflecting purchases, payments, or other actual use of a credit card or account by the defendant; or (C) an electronic printout or other documentation from the original creditor establishing the existence of the account and showing purchases, payments, or other actual use of a credit card or account by the defendant.

b.    The debt buyer must prove the terms and conditions to which the consumer debt was subject, by producing a certified or otherwise properly authenticated photocopy or original of the document actually applicable to the consumer debt at issue.

c.    The debt buyer must prove that it owns the consumer debt at issue by providing a chronological listing of the names of all prior

owners of the debt and the date of each transfer of ownership of the debt, beginning with the name of the original creditor; and a certified or other properly authenticated copy of the bill of sale or other document that transferred ownership of the debt to each successive owner.

     d.    The debt buyer must identify the nature of the debt or account by including in the affidavit the following information: (A) the name of the original creditor; (B) the full name of the defendant as it appears on the original account; (C) the last four digits of the social security number for the defendant appearing on the original account, if known; (D) the last four digits of the original account number; and (E) the nature of the consumer transaction, such as utility, credit card, consumer loan, retail installment sales agreement, service, or future services.

     e.    The debt buyer must provide information relating to any charge-off of the account and an itemization of all money claimed by the debt buyer.

34.    Proof of these items has always been required to obtain a judgment. The amendment was put in place to provide an evidentiary checklist for practitioners and judges and provide protection to debtors who do not challenge or defend the claims from having a judgment entered

by default that is not supported by legally sufficient evidence establishing the plaintiff's entitlement to relief and damages.

35.     Nonetheless, the amendment to Rule 3-306 has drastically reduced lawsuits filed by debt buyers such as Equable. While Equable filed 3,231 lawsuits in 2011, only 72 have been filed from January 1, 2012, to date.

**C.     *Defendant Attempts to Collect a Debt by Filing a Frivolous Lawsuit against Joseph Paschall in the District Court of Maryland***

36.     Sometime before May 11, 2011, Equable hired Schlee & Stillman, LLC to collect an alleged consumer debt from Plaintiff Joseph Paschall. This debt regarded an alleged account with "Chase Bank USA, N.A. (WAMU)" with an account number ending in "2772." Equable alleged that it had been assigned this debt.

37.     Equable directed Schlee & Stillman, LLC to collect the alleged debt by filing litigation in the District Court of Maryland for Anne Arundel County against Plaintiff Joseph Paschall.

38.     On or about May 11, 2011, Schlee & Stillman, LLC, on behalf of Equable drafted a complaint seeking a judgment in the amount of $9,444.48 against Joseph Paschall for allegedly failing to pay a debt owed

on to "Chase Bank USA, N.A. (WAMU)." On the same day, Equable and Schlee & Stillman, LLC filed 10 other collection lawsuits in the District Court of Maryland for Anne Arundel County.

39.   Equable requested a judgment on affidavit, supported by an "Affidavit of Account," signed by Jeff Hasenmiller, that was filed with the Complaint. **Exhibit 1**. Equable controlled and directed the efforts of Jeff Hasenmiller and Schlee & Stillman, LLC to collect the alleged debt.

40.   In the "Affidavit of Account," Hasenmiller stated that he was an employer of Equable. Hasenmiller also claimed to have personal knowledge of "the matters stated herein." Hasenmiller then claimed that "Equable Ascent Financial, LLC, has purchased and is the owner of a claim against, Joseph Paschall, Account Number 4559505000492772, in the amount of $9,444.48 plus and interest of $0.00 plus attorney fee of $0.00 for a total of $9,444.48 representing the charged off balance less payments received, if any."

41.   Equable failed to produce any documents that supported the claims set forth in the "Affidavit of Account" signed by Hasenmiller.

42.   The affidavit failed to present admissible evidence that (1) the alleged debt ever existed; (2) that Joseph Paschall was legally obligated to

pay the alleged debt to "Chase Bank USA, N.A. (WAMU)"; (3) that Equable was the owner of the alleged debt and had standing to sue; (4) that the alleged debt had not been paid, and (5) the amount, if any, still owed on the alleged debt.

43.     No admissible evidence was produced purporting to establish ownership of the subject debt by Equable.

44.     Equable failed to allege or prove the existence of the debt by providing at least one of the following: (A) a document signed by Joseph Paschall evidencing the debt or the opening of the account; (B) a bill or other record reflecting purchases, payments, or other actual use of a credit card or account by Joseph Paschall; or (C) an electronic printout or other documentation from the original creditor establishing the existence of the account and showing purchases, payments or other actual use of a credit card or account by Joseph Paschall.

45.     Equable failed to allege or prove the terms and conditions to which the consumer debt was subject, by producing a certified or otherwise properly authenticated photocopy or original of the document actually applicable to the consumer debt at issue.

46.     Equable failed to provide information relating to any charge-off

of the account and an itemization of all money claimed by Equable.

47.     The defects in the Complaint and "Affidavit of Account" were obvious and readily discoverable to the point that no reasonable attorney that read the complaint before signing it would conclude that good legal and factual grounds existed to file a claim against Joseph Paschall on behalf of Equable. The Complaint and "Affidavit of Account" were so glaringly defective that they could not be filed in good faith.

48.     The first trial on the claim was held on January 13, 2012. Joseph Paschall represented himself at this trial and prepared for the trial by speaking with a person at the Self Help window of the clerk's office. During this trial, Joseph Paschall argued that judgment should be entered in his favor because Equable was unable to produce admissible evidence of (1) the existence of the alleged debt, (2) the amount owed on the alleged debt, (3) the date of the last payment made on the alleged debt, and (4) that Equable was the assignee of the alleged debt and had standing to pursue the claim.

49.     Equable was represented by Schlee & Stillman, LLC at the first trial. Unable to produce the evidence required or to answer the arguments made by Joseph Paschall, Equable's counsel requested a postponement to

allow it to have a witness present at the trial. The Court granted the postponement over the objection of Joseph Paschall, but ordered "no further continuances for plaintiff."

50.   The second trial on the claim was held on June 12, 2012. Equable again was represented by Schlee & Stillman, LLC and again appeared without a witness or any admissible evidence establishing a legal and factual basis in support of its claim. After learning that Joseph Paschall was in attendance and prepared to defend the claim, Equable again sought a postponement, in direct violation of the Court's January 3, 2012, order. The request for postponement was denied. Judgment was entered in favor of Joseph Paschall on the claim.

### D.   *Plaintiff Suffered Actual Damages*

51.   The conduct and actions of Equable and its attorneys and agents caused emotional distress and embarrassment to Joseph Paschall.

### COUNT I

### Violation of the Fair Debt Collection Practices Act
### 15 USC 1692, *et. seq.*

52.   Joseph Paschall hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

53.    As alleged above, in its attempts to collect the aforementioned alleged debt, Equable violated the FDCPA by using false, deceptive, or misleading representations or means in connection with the collection of a debt in violation of 15 U.S.C. § 1692*e*. In the complaint filed against Joseph Paschall in the District Court of Maryland, Defendants falsely represented the character of the alleged debt in violation of 15 U.S.C. § 1692*e*(2)(A) by asserting that the debt was for a "Chase Bank USA, N.A. (WAMU)" account, when Equable knew, or should have known, that it lacked legally sufficient proof that Joseph Paschall owed any such obligation. Equable also falsely represented that it was entitled to pursue a claim against Joseph Paschall when it knew or should have known that it did not possess the evidence necessary to establish ownership of the alleged debt.

54.    In the complaint filed against Joseph Paschall in the District Court of Maryland, Equable used deceptive means to attempt to collect a debt in violation of 15 U.S.C. § 1692*e*(10) by attempting to obtain a judgment on affidavit based upon inadmissible evidence that failed to establish a legally sufficient entitlement to relief.

55.    In the complaint filed against Joseph Paschall in the District Court of Maryland, Equable used unfair and unconscionable means to

attempt to collect a debt in violation of 15 U.S.C. § 1692*f* by asserting that the debt was for a "Chase Bank USA, N.A. (WAMU)" account, when Equable knew, or should have known, that it lacked legally sufficient proof that Joseph Paschall owed the alleged debt and that it owned the account.

56.     In the complaint filed against Joseph Paschall in the District Court of Maryland, Equable used unfair and unconscionable means to attempt to collect a debt in violation of 15 U.S.C. § 1692*f* by attempting to obtain a judgment on affidavit based upon inadmissible evidence that failed to establish a legally sufficient entitlement to relief.

57.     As a direct consequence of the Equable's acts, practices and conduct, Joseph Paschall suffered emotional distress and embarrassment.

## COUNT II

### Violation of the Maryland Consumer Debt Collection Act
### Md. Code Ann., Com. Law, § 14-201, *et seq.*

58.     Joseph Paschall hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

59.     The alleged debt at issue in this dispute was a debt which was primarily for personal, family, or household purposes and is therefore a "consumer transaction" as that term is defined by the MCDCA.

60.   In the complaint filed against Joseph Paschall in the District Court of Maryland, Equable attempted to enforce a right with knowledge that the right does not exist in violation of Md. Code Ann., Com. Law. §14-201(8) by asserting that the debt was for a "Chase Bank USA, N.A. (WAMU)" account when Equable knew, or should have known, that it lacked legally sufficient proof that Joseph Paschall owed the alleged debt and that it owned the account.

61.   In the complaint filed against Joseph Paschall in the District Court of Maryland, Equable attempted to enforce a right with knowledge that the right does not exist in violation of Md. Code Ann., Com. Law. §14-201(8) by attempting to obtain a judgment on affidavit based upon inadmissible evidence that failed to establish a legally sufficient entitlement to relief.

62.   As a direct consequence of the Equable's violations of the MCDCA, Joseph Paschall has suffered inconvenience, emotional distress, loss of sleep and humiliation and is therefore entitled to actual damages pursuant to Maryland Code Annotated, Commercial Law §14-203 from Equable.

# COUNT III

## Violation of the Maryland Consumer Protection Act
## Md. Code Ann., Com. Law, § 13-101, *et seq.*

63.    Joseph Paschall hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

64.    Joseph Paschall is a consumer as defined by the Consumer Protection Act ("CPA"), Maryland Code Annotated, Commercial Law § 13-101(c).

65.    Section 13-303 of the CPA prohibits unfair or deceptive trade practices in the sale of consumer goods and the extension of consumer credit.

66.    Under the CPA, unfair or deceptive practices also include any violation of the MCDCA.

67.    As a direct consequence of Defendant's violation of the CPA, Joseph Paschall has suffered an injury or loss and is entitled to actual damages and attorneys fees pursuant to CPA §13-408.

WHEREFORE, Plaintiff, Joseph Paschall, respectfully prays for a judgment against Defendants, jointly and severally, as follows:

a.    Actual damages pursuant to 15 U.S.C. § 1692$k$(a)(1); Md.

Code. Ann., Com. Law. §14-203; and Md. Code Ann., Com. Law §13-408 in the amount of $75,000.00;

      b.    Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692$k$(a)(2)(A);

      c.    Costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692$k$(a)(3) and Md. Code Ann., Com. Law §13-408; and

      d.    For such other and further relief as may be just and proper.

## JURY DEMAND

Pursuant to Rule of Civil Procedure 38, Joseph Paschall hereby demands a trial by jury on all issues in this action, except for any issues relating to the amount of attorneys' fees and litigation costs to be awarded should he prevail on any of his claims in this action.

Date: July 5, 2012          Respectfully Submitted,


               */s/ E. David Hoskins*
               E. David Hoskins, Bar No. 06705
               THE LAW OFFICES OF E. DAVID HOSKINS, LLC
               Quadrangle Building at Cross Keys
               2 Hamill Road, Ste. 362
               Baltimore, Maryland 21210
               (410) 662-6500 (Tel.)
               *dhoskins@hoskinslaw.com*